Matter of Developmental Disabilities Inst., Inc. v New York State Off. for People with Dev.al Disabilities (2023 NY Slip Op 01218)

Matter of Developmental Disabilities Inst., Inc. v New York State Off. for People with Dev.al Disabilities

2023 NY Slip Op 01218

Decided on March 9, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 9, 2023

534897 
[*1]In the Matter of Developmental Disabilities Institute, Inc., Petitioner,
v
New York State Office for People with Developmental Disabilities, Respondent.

Calendar Date:January 18, 2023 

Before:Egan Jr., J.P., Lynch, Aarons, Ceresia and Fisher, JJ.

Moritt Hock & Hamroff LLP, Garden City (Nancy A. Hampton of counsel), for petitioner.
Letitia James, Attorney General, Albany (Laura Etlinger of counsel), for respondent.

Egan Jr., J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Commissioner of the Office for People with Developmental Disabilities finding that petitioner constructively discharged a patient in violation of 14 NYCRR 633.12.
Petitioner, an agency that provides services to individuals with developmental disabilities, is certified by respondent to operate an intermediate care facility in the Town of Huntington, Suffolk County. K.W., who had resided in the facility since 2014, was admitted to Huntington Hospital in December 2018 to address her self-abusive behavior. The hospital treated K.W. and cleared her for discharge to the facility as of January 11, 2019. The same day, petitioner's medical director sent an email in which he opined that petitioner "should not accept [K.W.] back" because the environment at the facility was exacerbating her behavior, that the attempts to address her behavior had been unsuccessful and that "alternative residential options" should be explored. Petitioner accordingly refused to allow K.W. to return to the facility.
On January 18, 2019, respondent notified petitioner that its refusal to take K.W. back at the facility constituted a discharge and that it was required by 14 NYCRR 633.12 to afford K.W. an opportunity to object to any proposed discharge and remain at the facility while the objection process was underway. The Mental Hygiene Legal Service then advised petitioner in a January 22, 2019 letter that it formally objected to the discharge of K.W. and demanded that, as required by 14 NYCRR 633.12, she be allowed to return to the facility while the objection process was underway. For the next several months, efforts to place K.W. elsewhere were unsuccessful, and petitioner neither allowed K.W. to return to the facility nor complied with the procedure set forth in 14 NYCRR 633.12. Petitioner's inaction resulted in, among other things, a complaint to the Department of Health (hereinafter DOH), which conducted an inspection and found that petitioner's conduct toward K.W. violated the federal regulatory requirements governing participation in the Medicaid program in various respects. Accordingly, by letter dated April 24, 2019, DOH advised petitioner that it was recommending that petitioner's Medicaid participation be terminated on July 9, 2019 unless petitioner "achieved substantial compliance with the federal regulations."
Petitioner thereafter made several attempts to bring itself into compliance that were rejected by DOH because, in relevant part, they did not include the return of K.W. to the facility. Further, by letter dated May 24, 2019, respondent advised petitioner that it had violated the terms of its operating certificate by refusing to allow K.W. to return to the facility as required by 14 NYCRR 633.12. Respondent therefore fined petitioner $10,000 and made clear that petitioner faced further administrative action [*2]if it did not allow K.W. to return to the facility within 10 days of the letter's receipt (see Mental Hygiene Law § 16.17 [g]).
Petitioner finally allowed K.W. to return to the facility on June 6, 2019, and DOH determined that petitioner had corrected the violations that had threatened its Medicaid participation. Petitioner then requested an administrative hearing to review the fine imposed by respondent. Following the hearing, a Hearing Officer issued a final report finding that respondent had not proven that petitioner constructively discharged K.W. and recommending that the fine be rescinded and expunged. Upon administrative review, respondent's Commissioner declined to adopt the Hearing Officer's recommendation, finding that petitioner's actions constituted a constructive discharge of K.W. that triggered the provisions of 14 NYCRR 633.12. The Commissioner accordingly upheld the imposition of the fine, but suspended it because petitioner did eventually allow K.W. to return to the facility. Petitioner commenced the instant CPLR article 78 proceeding seeking to annul the Commissioner's determination, which was transferred to this Court for resolution (see CPLR 7804 [g]).
We confirm. Petitioner primarily contends that the Commissioner irrationally construed 14 NYCRR 633.12 to encompass its conduct. To put petitioner's argument in context, that regulation directs service providers such as petitioner to develop and implement a process for addressing objections to a variety of decisions affecting a service recipient, including "a proposal . . . to discharge" one (14 NYCRR 633.12 [a] [2] [iii]; see 14 NYCRR 633.12 [a] [1]; Matter of Community, Work, & Independence, Inc. v New York State Off. for People with Dev. Disabilities, 182 AD3d 821, 823 [3d Dept 2020]). The regulation requires a service provider to "establish mechanisms" to resolve an objection to such a decision, including the ability of an objecting party to demand a formal administrative review if efforts to informally resolve the issue fail (Matter of Community, Work, & Independence, Inc. v New York State Off. for People with Dev. Disabilities, 182 AD3d at 823; see 14 NYCRR 633.12 [a] [1], [8]). When the objected-to decision involves a proposal to discharge the service recipient, the regulation further requires that a proposed discharge may only proceed during the administrative review if the Commissioner approves the discharge as necessary to "protect a person's health, safety, or welfare or the health, safety, or welfare of others" (14 NYCRR 633.12 [a] [8] [i] [e] [3]). Petitioner indisputably made no effort to comply with these procedures; the question, rather, is whether the Commissioner properly deemed the refusal to allow K.W. to return to the facility to be a "discharge" that required petitioner to do so.
With that in mind, as an agency is in the best position to explain both its intent in adopting a regulation and the proper construction of that regulation, we will generally "[*3]defer to an administrative agency's rational interpretation of its own regulations in its area of expertise" unless that interpretation conflicts with the plain meaning of the regulatory language (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; accord Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 174 [2019]). Respondent has defined discharge in its regulations as not just "the release of a person from a facility and the termination of programs/services at the facility," but also whenever "a residential or day program facility determines, in conformance with its policies/procedures, that it can no longer provide programming/services, even if it has been incapable of mak[ing] alternative provisions for programs or services" (14 NYCRR 633.99 [aj]). The regulatory language reflects that a discharge occurs under any scenario where a facility determines that it cannot provide a person with services, in other words, and offers no obvious support for petitioner's assertion that the motivation behind, or the intended duration of, a determination to stop providing services could render it something other than a discharge.
In accordance with the regulatory language, respondent's Deputy Commissioner issued a 2017 memorandum in which she cited several examples of "inappropriate discharge" triggering 14 NYCRR 633.12, including the situation where a facility "refus[es] to allow an individual receiving services to return to his [or her] certified residence or day program following a period of hospitalization." Nothing in the regulatory text directly contradicts that reading and, indeed, to read the regulation in a manner that permitted an agency to deprive individuals of services for any period of time without affording them an opportunity to object would conflict with respondent's statutory mandate to ensure that "persons with developmental disabilities . . . are provided with services including care and treatment" and that "the personal and civil rights of persons receiving such services are protected" (Mental Hygiene Law § 13.07 [c]). Accordingly, even accepting that an alternate interpretation of the regulatory language could be justified, we are satisfied that respondent's reading of that language is rational and defer to it (see Andryeyeva v New York Health Care, Inc., 33 NY3d at 175-176; Matter of Sternberg v New York State Off. for People with Dev. Disabilities, 204 AD3d 680, 682 [2d Dept 2022]).
Finally, in view of the foregoing, substantial evidence in the record supports the Commissioner's determination that petitioner failed to comply with 14 NYCRR 633.12. The hearing testimony and other proof in the record left no doubt that petitioner discharged K.W. within the meaning of 14 NYCRR 633.12 when it refused to allow K.W. to return to the facility after she was deemed ready by the hospital and despite her objection to that proposed discharge. It is true that petitioner presented evidence that K.W. was not ready to be discharged back to [*4]the facility in January 2019 and that alternate arrangements for K.W. were explored and would have been more suitable. As the Commissioner noted, however, those points were irrelevant to petitioner's obligations under 14 NYCRR 633.12 and were matters that should have been explored during the objection process itself. Thus, the Commissioner's finding of a violation and the imposition of a fine will not be disturbed (see Matter of Community, Work, & Independence, Inc. v New York State Off. for People with Dev. Disabilities, 182 AD3d at 825-826).
Lynch, Aarons, Ceresia and Fisher, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.